The final case of this morning is People v. Lambert. The Times will take note that Justice Overstreet is a panel member and a full participant in this case. He is not available this morning and will hear the oral arguments online and consider the briefing and the record and be a part of this panel's decision. Counsel for the appellant, you may proceed. May it please the Court, Counsel. My name is Sharon Shanahan and I represent the people of the state of Illinois, exceeding my jurisdiction. If either of you have ever traveled to Paducah, Kentucky before the completion of Interstate 24, you drove over the Burkeport Bridge. It's near... I may say I'm old enough to have done that before that. I am? I know it's noted that in a prior case the 1960s were noted as a long, long, long time ago and it doesn't seem that long ago to me. And I know my comments are taking up part of your time so we'll finish you up with the time. I had that same thought at that comment. But the Burkeport Bridge is narrow and it's noisy and it's rough. It's made from extruded metal so if you stand on it you can look straight through it and see the water underneath you. It has no shoulder at all. And for many years prior to this case, all traffic accidents occurring on the Burkeport Bridge were handled by the Kentucky Police. Unknown to the Kentucky Police, unknown to the Illinois Police, a small sliver of the bridge is actually in Illinois. So the question before this court is, what happens when an accident occurs on that Illinois sliver and the Kentucky Police arrest the drunk after a collision on the bridge? Now, as a general rule, a law enforcement officer who is outside of his jurisdiction cannot use the power of his office to obtain evidence. And to this extent, the trial court's ruling was correct. There was a Fourth Amendment violation. But the fact that a Fourth Amendment violation occurs does not necessarily mean the exclusionary rule applies. As our Supreme Court has noted in Haring, exclusion has always been our last result, not our first impulse. To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid to the justice system. So the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct. That's what the United States Supreme Court has said in Haring. Examining the good faith of a good faith argument begins with the acknowledgement that the police erred. Starting with that premise, the court then goes on to determine whether the error was deliberate, reckless, or grossly negligent. Here, the trial court failed to give any consideration to the argument made by the state that the case fell under the good faith exception to the exclusionary rule. Now, the pertinent analysis, according to the Illinois Supreme Court, of deterrence and culpability is objective, not an inquiry into the subjective awareness of the officers. The question is whether a reasonably trained officer would have known that the search or seizure was illegal in light of all circumstances. And as this court has noted in People v. Pierce, the purpose and flagrancy of the police misconduct is premier in any analysis, and this factor may alter or even supersede any causal or temporal proximity conclusions which might otherwise be made. So, if a reasonable police officer would have no reason to suspect that his conduct was wrongful under the circumstances, the good faith exception to the exclusionary rule should be applied. Now, it is undisputed that the Kentucky police officers in this case, and I'm quoting, absolutely believed that Kentucky police were responsible for policing, and again I quote, every bit of the Brookport Bridge. Both of the officers who testified said that there were numerous accidents on the bridge in the past, based on a, and again I quote, standing agreement with Illinois. And it was only after it was brought to the attention of the courts, of the finding of where the low water mark was in the 1700s, that did Kentucky find out. Because it was first charged in Kentucky. It was only then that Kentucky found out that the portion of the bridge where the crash occurred was in Illinois. There were Illinois police officers present at the accident. They discovered evidence and turned it over to the Kentucky police. So it's clear that the Illinois officers also believed that Kentucky was responsible. So they were operating under the same misconception. I would note that the misconception has been immediately rectified and a sign was placed on the bridge, marking the state line. There was clearly no flagrant police misconduct. Police officers are not legal technicians. They don't sit at home in the evenings reading reports of criminal decisions. And I would say that any recently trained Kentucky officer would have reached the same conclusion that these officers did, given the historical long-standing misconduct, excuse me, the historical long-standing understanding that the bridge was in Kentucky. It seems like you spoke both ways. One way was that they'd always done it, therefore that's why they did it, or they always knew it was in Kentucky. Or were they working the bridge because it was always done, or were they working the bridge because it was in Kentucky? They thought it was in Kentucky. They always worked the bridge because they always thought it was Kentucky. That's what I wanted to know. Yes. I would cite to this court the United States Supreme Court's decision in Herring v. United States. In that case, wasn't it essentially decided that the Ohio River, essentially the Illinois side of the river was the state line of Kentucky for the most part? No. That's not the case I was talking about, but I can go to that question. That case is Illinois v. Kentucky. Okay. Yes. There was a case in 1991, in which the Supreme Court held that the border between Illinois and Kentucky was the 1792 low water mark. And the court noted that the territory in question is a comparatively narrow sliver of the Ohio along its northerly shore. So there was a portion of the Illinois side of the Ohio River that was on dry land that essentially was part of Kentucky. Determined by that case. Based upon the low water mark in 1892. I mean, 1792. There was a sliver that was Illinois. Almost all of the river is Kentucky. Okay, I said it wrong. Yes. So, yes, that court case does exist, but as I noted, as is noted frequently in many, many cases, police officers are not legal technicians. I think it's kind of interesting to note that even the state's attorney's office in Kentucky, I'm not sure they're called that there, but they didn't know. So to take police officers who have worked this bridge for years, who have handled accidents on this bridge, who believe that there was, had been told that there was an understanding with Illinois that they handled all the cases on the bridge, that they absolutely believe that, to say, oh, well, they should have known about a 27-year-old case that said that there was a sliver of Kentucky, which, by the way, doesn't refer to the bridge. Because you wouldn't know whether the bridge was incurred from that. You would have to go, there is supposed to be a paper printout of 24 exhibits filed somewhere in the county clerk's office in McCracken County that shows that line. Wasn't that also filed in Mesa? Yes. What about the maintenance of the bridge? It was always the state of Illinois, I thought. That was evidence that came out. So you would see those orange Illinois trucks on the bridge, or whatever is working on it. I don't recall that being in the record. Was it not in the record? I'm not saying that. I just don't recall there being any evidence that Illinois did the maintenance. That doesn't ring a bell. I don't have a perfect memory, but I may be mistaken. Thank you. Counsel for Appellate. Thank you. Maybe you can answer the question. Is there a testimony or anything about Illinois maintenance of the bridge? Yes, I believe I was asking the question because I was doing the motions to press and it was my burden to put on evidence, so I called the two Kentucky State Police officers, or Kentucky deputies. And one of the deputies testified that it was their understanding, or his understanding, there was an agreement between Illinois and Kentucky that Kentucky would police the bridge and Illinois would maintain the bridge. Is that in evidence? There is testimony to that. There is no agreement set forth by anybody setting forth that that is an actual agreement. That was the officer's belief that there was an agreement to that effect. Okay. Just for the record, are you Attorney Mark Hunter? And may it please the Court, Counsel. My name is Mark Hunter. I represent the defendant, James Lambert, in this case. And I did do the suppression hearing while Attorney Wittig was overseas on duty for the military. And so I'm familiar with the facts of the suppression hearing. And again, going back to what I just said, where is this agreement? There's a belief that this agreement exists, but there's no proof in the record that this agreement exists. Why would deputies testify that they believed it was there? And they relied upon this unknown agreement, unproven agreement. Based upon your brief, you seem to agree that the review should be based upon what an officer objectively would do as to what that officer's conduct was, whether it was reasonable or not. So was his conduct objectively reasonable? Do you agree with that? I do not believe it was reasonable. I believe when, back in the 1990s, when this United States Supreme Court decision was recorded in all the counties along the Ohio River, both in Kentucky and Illinois, that put people on notice where the jurisdiction is. Just like when you record marriages, mispendants, deeds, judgments, you put people on notice by recording that. And to try to use a good-faith exception when you actually are putting on notice of a legal case where the jurisdiction is, I think is not applied to the good-faith exception. When you look at the good-faith exceptions, primarily what you have is a statute that's later deemed unconstitutionally relied upon or a case that later is overturned that they relied upon. Those are typically where you see good-faith apply. If there had been a situation where, for example, the government was able to prove that there was this agreement and we challenged that agreement and the trial court determined it was an unconstitutional agreement, if the officers had relied upon that agreement and it was later determined to be unconstitutional, I think good-faith would apply. That's not the case here. There is no agreement. It's like an old wives' tale. This is what was going on, this is what we were told when we were trained, and therefore we're going to apply. Interestingly enough, and it's in the transcript, yes, they put a sign on the Brookport Bridge. Whether it's active or not, I don't know, but they put a sign there. With the sign there, if an accident happened and it turns out it's on the other side and it actually was in Kentucky versus Illinois, then I think good-faith would apply. There is no sign like that on I-24. Does that mean if the same thing happens there, on the I-24 Bridge, that they can claim good-faith exception to that accident? We've got the recorded decision. That's what the officers should be relying on. That's like everybody else. What was happening back in the 90s was Kentucky was threatening to take the casino vote. That's pretty much what spurred these things on. They were also taking fishermen from Illinois in the Ohio River. That was what this case was rectifying, was attempting to rectify, and by reporting in all the county court's offices, I believe that's what was done. That put everybody on notice as to where the jurisdiction is between Illinois and Kentucky. What happened, I believe, I looked briefly at the Supreme Court case, but I believe the dams affected the low-water market, and that's why they went back to the low-water market of 1792 and determined where the jurisdiction is. Again, as I was saying, I think we have judicial precedent here. We have a judicial decision that put people on notice.  Unlike a situation where you had a case law that was overturned with the officers relying on that case law, we actually have good case law that they should have been relying on. They failed to do so. They overstepped their bounds. Brookport was there. Brookport found the items allegedly thrown off the bridge on dry ground underneath the bridge. They could have easily turned this arrest, this stop, this investigation over to Brookport, but they failed to do so. They arrested Mr. Lambert. They took him into Brookport to question him about the items thrown over the bridge. They then arrested him for that, took him back to McCracken County Jail, and after finding that he allegedly was the driver, pulled him out of the jail, read him the Kentucky Implied Consent Law for the DUI, and then did the field sobriety test there in McCracken County. Those are the things that Judge Lieberman suppressed, and we're asking the court to affirm that suppression. Thank you. Thank you, Counsel. Rebecca. Counsel for the defendant agrees that there was a belief. His words were there is a belief by the police officers that they policed the whole bridge. If you're a police officer and your superiors tell you we policed the whole bridge, and if you've done, time after time after time, if you have the specific language in the transcript is that he absolutely believed that Kentucky was responsible for policing every bit of the Brookport Bridge. Counsel makes a good argument that contraband was found on the dry ground of the Illinois side. So isn't that a good argument that this did not happen in Kentucky based upon a good faith argument that he could never have thought so? He threw it off the bridge where the accident occurred. So what the fact that it landed on Illinois land I think is immaterial. The question is where he threw it. But I think more importantly the fact that Illinois police went and got that contraband and gave it back to Kentucky because why? They believe that everything occurred in Kentucky. Why would you give evidence back to Kentucky police officers if you thought that something applied in Illinois? I don't think you can expect police officers to be on notice of every single legal precedent that's decided much less a 27-year-old case that there's a good likelihood either of these police officers was even a police officer when that case was decided to say that as I said police officers are not legal technicians. Police officers are told we police the entire court bridge. I think the case that I cited to this court Harry versus the United States is very relevant. There was an active the clerk told the police officers that there was an active arrest warrant for the defendant's failure three minutes later. The clerk discovers that the warrant has been recalled and the defendant filed a motion to suppress. This is the United States Supreme Court pointed out that it was the arrest was made on reasonable but mistaken assumptions and it was not a constitutional violation. The Haring court went on to note that letting guilty and possibly dangerous defendants to go free is something that offends the basic concepts of the criminal justice system and the exclusionary rules costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those who are urging its application. Now as I said the Haring court made the exception the trial court never even mentioned it. He just excluded it and I think that's an extremely important part of this is that despite the fact that the state raised the issue the trial court never addressed it. These officers having been told for years that we police every bit of the information that   have the information that we have does not mean that their decision was unreasonable and therefore the exclusionary rule should not apply and the good faith exception should be. Are there any other questions? Thank you, counsel. The matter under advisement is adjourned and issued its decision in due course. This concludes the cases set on today's docket for oral argument. Court will be in recess until the January call.